JUAN MANZANARES, P. FERRAO, A. MORILLO, M. A. GUZMÁN, M. MONCLOVA, D. MESTRE, E. ALMODÓVAR, J. PIZÁ, J. M. QUIDLEY, J. C. FERRER y B. HALVORSEN, demandantes y apelantes, *v.* PORTO RICO RACING CORPORATION, demandada y apelada.

No. 5464.—*Sometido:* Diciembre 8, 1932. *Resuelto:* Mayo 23, 1933.

*Guerra-Mondragón & Soldevila,* abogados de los apelantes; *M. A. Martínez Dávila,* abogado de la apelada.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Juan Manzanares y otros incoaron procedimiento contra la Porto Rico Racing Corporation. En representación de cada uno de los demandantes se alegó que éste tenía derecho a parte del *pool* como resultado de las carreras celebradas en el hipódromo perteneciente a la demandada. Según hemos explicado en varios otros casos, dicho *pool* es adjudicado a la persona o personas que de siete carreras logran escoger y escribir en una boleta que se devuelve a la administración, el

mayor número de caballos ganadores. Los demandantes alegaron que en la segunda, tercera, cuarta, quinta, sexta y séptima carreras ellos habían acertado los caballos ganadores y que la primera carrera fué anulada por el jurado del hipódromo, única entidad que tenía derecho a determinar el orden en que los caballos llegaron a la meta; que dicho jurado nunca determinó qué caballo había en realidad ganado la primera; que con motivo de tal anulación cada uno de los demandantes tenía derecho a una o más partes del *pool*. Debe explicarse que cuando se anula una carrera y el dueño del cuadro acierta los otros seis ganadores, éste recibe una parte del *pool* por cada caballo que figuraba en la carrera anulada.

La demandada en su contestación aceptó un gran número de las alegaciones de la demanda. Negó ciertas materias y en la cláusula octava alegó que Leopoldo García, sosteniendo haber adivinado correctamente los siete ganadores, apeló de la decisión del jurado para ante la Comisión Hípica Insular, que anuló la decisión del jurado; que en un caso iniciado ante la Corte de Distrito de San Juan por dicho Leopoldo García contra la aquí demandada, se dictó sentencia en favor de Leopoldo García por haber acertado las siete carreras, y la demandada había depositado en corte el total del *pool*. Se desprende que el mismo fué entregado a Leopoldo García.

El caso fué llamado para juicio. Las partes interrumpieron los procedimientos con el objeto de tener la oportunidad de celebrar consultas y luego archivaron en la corte una estipulación que lee como sigue:

"Comparecen las partes representadas por sus respectivos abogados y someten el caso a la corte bajo la siguiente estipulación:

"1. El hecho primero de la demanda lo aceptan las partes con la aclaración de que actualmente el hipódromo Quintana no lo explota la Porto Rico Racing Corporation por haberlo arrendado, pero en aquella fecha era la corporación que explotaba el hipódromo.

"2. La alegación segunda, tercera y cuarta de la demanda fueron aceptadas por la parte demandada.

"3. En cuanto a la alegación quinta, de la cual se aceptan los dos

primeros hechos y se niega el último, en cuanto a este último, se somete el reglamento de la Comisión Hípica y el expediente en el caso civil No. 3678, seguido por Leopoldo García v. The Porto Rico Racing Corporation, ante esta misma corte.

"4. La alegación sexta y séptima son admitidas por las partes.

"5. La alegación octava se somete con el reglamento y con el referido caso de García v. The Porto Rico Racing Corporation, arriba mencionado.

"6. La alegación novena de la demanda es admitida.

"7. En cuanto a la alegación décima, se somete con el reglamento la aceptación (sic) que consta en dichos hechos (sic) y el referido expediente de García v. The Porto Rico Racing Corporation.

"8. Y la materia nueva que se alega en la contestación se somete con la prueba del demandado consistente en el citado expediente 3678, seguido por Leopoldo García v. The Porto Rico Racing Corporation ante esta misma corte. Y este expediente lo presenta el demandado con todos los documentos pertinentes a la acción.

"Y suplican a la corte se sirva impartir su aprobación a la presente estipulación y de acuerdo con la misma y con los documentos en ella referidos, pronunciar la sentencia que corresponda.

"San Juan, P. R., a 28 de mayo de 1929.

"(Fdo.) Ismael Soldevila, Abogado de los demandantes.

"(Fdo.) Manuel A. Martínez Dávila, Abogado de la demandada."

En el caso No. 3678 ante la Corte de Distrito de San Juan, en que Leopoldo·García era el demandante y la Porto Rico Racing Corporation la demandada, la demanda decía que los siguientes caballos fueron los ganadores de las carreras celebradas el 6 de marzo de 1927: primera carrera, Saturnina; segunda carrera, Frances Johnson; tercera carrera, Pirata; cuarta carrera, Sherman; quinta carrera, Colombina; sexta carrera, Rin Tin Tin; séptima carrera, Mrs. Sipi.

Esa alegación figuraba en el cuarto párrafo de la demanda. Este párrafo cuatro fué admitido por la contestación a excepción de que la demandada alegaba que Saturnina había llegado primero pero que la carrera había sido anulada por el jurado. Como cuestión adicional de defensa la demandada alegaba que con posterioridad a la fecha de dichas carreras la Comisión Hípica Insular resolvió que el jurado del hipó-

dromo Quintana no tenía autoridad para anular la primera carrera.

En el aludido caso de García la Corte de Distrito de San Juan resolvió o halló, según sea, que como la contestación de la demandada no negaba la alegación de que Saturnina había llegado primero, sino que por el contrario lo admitía, con la limitación de que la demandada alegaba que dicha carrera había sido anulada por el jurado y además admitía o alegaba que la actuación del jurado fué anulada por la Comisión Hípica, García tenía derecho a recobrar. La sentencia de la corte de distrito concedió al demandante García el importe del *pool,* después de hacer las deducciones corrientes, o sea, $12,118.78, y decía que debía hacerse tal pago si el demandante demostraba a la demandada haber acertado las siete carreras, etc., y se desprendía que el demandante tenía un cuadro que correspondía a otro depositado en el hipódromo con los siguientes caballos ganadores: Saturnina, Frances Johnson, Pirata, Sherman, Colombina, Rin Tin Tin y Mrs. Sipi.

En el presente caso la Corte de Distrito de San Juan dijo que el caso le fué sometido solamente mediante la prueba que aparecía en los autos del pleito No. 3678, Leopoldo García v. Porto Rico Racing Corporation, y las reglas de la Comisión Hípica Insular. La corte también resolvió lo que sigue:

"Habiéndose admitido como evidencia en este caso la demanda y la contestación en el caso de Leopoldo García, de acuerdo con la estipulación a virtud de la cual fué sometido el pleito, no cabe disputa con respecto a los hechos que resultan de las alegaciones de dicha demanda y contestación, que está bajo juramento."

La corte aparentemente quiso decir que la contestación estaba jurada. Continuó diciendo que como la Comisión había anulado la decisión del jurado, se restableció el *status quo,* en otras palabras, que la primera carrera se efectuó y Saturnina resultó ganadora. La corte también dijo que si como cuestión de hecho Saturnina fué la ganadora de la primera carrera, según fué acertado por Leopoldo García solamente,

el hecho de que el jurado dejara de determinar el orden en que llegaron los caballos no impedía que él percibiera el importe total del *pool*.

Los apelantes presentaron tres señalamientos de error.

El primero fué que la Corte de Distrito de San Juan cometió error al dar por probados hechos expuestos en la contestación del presente pleito con alegaciones contenidas en la demanda y en la contestación de otro litigio en el cual no fueron partes los demandantes, aunque aquellas alegaciones estén formuladas bajo juramento.

El segundo señalamiento fué que la corte erró al resolver que cesó la responsabilidad de la demandada una vez que depositó el importe del *pool* en el tribunal.

El tercero fué que la corte incurrió en error al absolver de la demanda a la apelada cuando debió haber fallado a favor de los demandantes y haber impuesto a la demandada el pago de las costas.

■ Convenimos con los apelantes en que la corte no tenía derecho a descansar en la contestación en el presente litigio como prueba de las cuestiones sometidas por las partes. Que la corte en realidad descansara en ella, puede ponerse en tela de juicio. Empero la contestación quizá puede considerarse por la corte en conexión con la estipulación de las partes para arrojar luz sobre lo que ellas admitían como prueba en el caso que tenían ante sí.

De igual modo los apelantes sostienen propiamente (fuera de la estipulación) que el pleito de García no era en forma alguna obligatorio para los demandantes en el presente recurso, y estamos de acuerdo con ellos en que la demandada en el caso de García no quedó exonerada de responsabilidad por haber depositado en corte el total del *pool* en dicho caso. En el caso de García la demandada no trató de que se hiciera comparecer en corte a los demandantes o a otras personas que alegaban tener derecho al *pool*. No hubo nada similar a un *interpleader*.

Expresándolo en distinta forma, los apelantes sostienen

que la actuación del jurado anuló para siempre la primera carrera y que como nadie, a no ser el jurado, tenía derecho a hacer que se tuviera en cuenta dicha carrera, surgió una situación a virtud de la cual el *pool* debía distribuirse entre las personas que acertaran seis carreras, independientemente de la primera; que debía considerarse que la primera carrera dejó de existir para los fines de la distribución del *pool*.

Gran parte de la discusión es al efecto de que el caso anterior no era en forma alguna *res adjudicata*. La apelada no discute esta contención. Admite libremente que dicho pleito en sí mismo no era *res adjudicata,* impedimento por sentencia, o nada similar. La apelada sostiene que como el pleito anterior fué mediante estipulación admitido en evidencia, ésta constituía prueba de los hechos hallados en dicho pleito, o sea, según la apelada, que se celebró una primera carrera que fué ganada por Saturnina y que García tenía derecho al *pool*.

Podríamos decir que la contención principal de los apelantes es que sólo se demostró que únicamente seis caballos habían resultado ganadores en dicho día, o que sólo se determinó que seis caballos fueron ganadores y que por ende el acertar seis caballos daba derecho a los demandantes a participar en el *pool* en unión a otras personas que habían acertado un número similar de ganadores. Los demandantes tenían derecho solamente a recobrar si la anulación por el Jurado de la primera carrera hizo que tal carrera quedara enteramente fuera de concurso, y los demandantes aseguran que nunca se hizo nada para determinar legalmente el ganador de la primera carrera. Sostienen necesariamente que la primera carrera quedó para siempre eliminada.

El caso sería muchísimo más claro para su resolución si las partes no hubieran firmado la estipulación. Es algo difícil imaginarse qué hubiera ocurrido de no haberse presentado tal estipulación. Convenimos ciertamente que si en el presente recurso la demandada hubiese ofrecido los autos del caso de García como prueba, los demandantes hubieran podido oponerse con éxito a la admisión de cualquier parte del

récord o al mismo en su totalidad. Los apelantes estaban tan convencidos de la eliminación permanente de la primera carrera, que asintieron a la admisión de los autos en el caso de García. Tal vez la idea de los demandantes fué que tales autos no tenían valor probatorio para ayudar en la controversia presentada por la demandada en este caso. El determinar cuál es el efecto de la estipulación presentada en este recurso y hasta qué punto el récord del caso de García tiene valor probatorio, son las cuestiones principales a resolverse en la presente apelación.

■■ Parece éste el momento propicio para considerar una de las contenciones de los apelantes, v. gr., que no se desprende suficientemente de los autos cómo la Comisión Hípica obtuvo dicha jurisdicción para revocar la decisión del jurado que anuló la primera carrera. Asumiendo, sin embargo, que el hecho incontrovertido es que la Comisión Hípica anuló la actuación del jurado, la presunción sería que la comisión actuó debidamente y que se tomaron las medidas intermedias que la facultaban para anular la decisión. Los apelantes sostienen insistentemente que no se demostró que García mismo apelara de la decisión del jurado anulando la primera carrera. Empero es un hecho indisputado en este caso que la Comisión Hípica en realidad anuló la actuación del jurado.

De igual modo *non constat* que la Comisión Hípica, que es la autoridad final en esta materia, pudiera hacer la anulación *sua sponte* o a virtud de informes llegados a ella. Es cierto que el reglamento da al comprador de un cuadro el derecho a apelar, mas tal derecho no excluye la posibilidad de que la comisión creyera que el jurado actuó sin jurisdicción y que sin haberse incoado recurso de apelación ésta anulara la decisión del jurado.

Uno de los hechos que la demandada pudo haber probado claramente en este caso fué que la Comisión Hípica realmente anuló la actuación del jurado. La estipulación hizo innecesario para la demandada probar ese hecho. Esto es un indicio de cuál fué la intención de las partes al hacer la esti-

pulación celebrada. En otras palabras, debe inferirse que la idea de ambas partes fué que los hechos que pudieran ser probados por los autos del caso de García debían ser considerados como prueba. Difícilmente podía ser la intención de de los demandantes, a virtud de la estipulación, impedir que la demandada presentara un caso como el que ella podía presentar. Del más ligero examen de los autos del caso de García se desprende que en el mismo se determinó que Saturnina era la ganadora de la primera carrera, independientemente de la razón por la cual la corte llegó a esa conclusión.

■■ Ha surgido en nuestras mentes alguna duda respecto a cuál fué la naturaleza de las conclusiones y de la sentencia en el caso de García. Ciertamente no hubo ninguna alegación o acto en sentido adverso de parte de la demandada. Ésta no hizo lo que los demandantes en este caso seguramente hubiesen hecho, controvertir la alegación de que Saturnina fué la ganadora de la primera carrera. La demandada en el caso de García específicamente admitió que Saturnina fué la ganadora.

No obstante, la sentencia en el caso de García fué una dictada sobre los méritos. El demandante en dicho caso presentó una demanda. La demandada contestó admitiendo las alegaciones esenciales de la demanda y se dictó sentencia sobre las alegaciones. Entre las partes en dicho caso hubo un juicio completo sobre los méritos. Debido al hecho de que a García se le entregó el importe del *pool,* la Porto Rico Racing Corporation quedó para siempre exonerada de pagarle cualquier cantidad de dinero por haber él acertado seis o siete caballos. En cuanto a él, la sentencia dictada en dicho caso era enteramente *res adjudicata* y él estaba impedido de hacer reclamación ulterior alguna. Tal situación podría surgir solamente a virtud de una sentencia sobre los méritos.

Sentencias sobre los méritos del caso son dictadas en rebeldía, a virtud de excepción previa, mediante juicio ante jurado (en el continente) y en otras formas que es innecesario enumerar. No hemos hallado una declaración específica en

los libros al efecto de que una sentencia sobre las alegaciones sea una sentencia sobre los méritos, pero ello necesariamente se deduce.

La dictada en el caso de García no fué meramente una sentencia sobre las alegaciones. Fué una sentencia dictada a virtud de estipulación de que el caso fuese sometido por las alegaciones. La Porto Rico Racing Corporation, si la cuestión llegase a ser importante, nunca podría negar que le había pagado a García el importe de la sentencia como ganador del *pool*.

El presente caso ilustra el punto que estamos tratando. La sentencia aquí fué dictada a virtud de estipulación. Los demandantes y apelantes sostienen insistentemente que la demandada está obligada por las admisiones contenidas en su contestación en este caso y principalmente que el jurado del hipódromo anuló la primera carrera. El caso de los demandantes depende en gran parte de esta admisión contenida en la contestación. Debido a la estipulación de las partes los demandantes no creyeron necesario probar que el jurado del hipódromo en realidad anuló la primera carrera. En lo que a este hecho se refería, el procedimiento que tenemos a la vista no es más contencioso que el del caso de García.

La apelada niega haber tenido intención alguna de hacer que el caso de García fuera *res adjudicata*. Sostiene que los autos de dicho caso constituían evidencia tendente a probar los hechos determinados en el mismo. La apelada cita los casos de *Falero* v. *Falero,* 15 D.P.R. 118; *Nadal* v. *Miranda,* 27 D.P.R. 323; *Sucn. del Rosario* v. *Rosalí,* 27 D. P.R. 105; *Rodríguez* v. *P. R. Ry. L. & P. Co.,* 19 D.P.R. 643; *Pretince* v. *Miller,* 82 Cal. 751; y *MacElroy* v. *Williams,* 14 Wash. 627, al efecto de que, de no ser objetado, cualquier hecho que tienda a probar algo puede ser ofrecido en evidencia, aunque sea inadmisible (*incompetent*) si se formula objeción. En este instante no estamos considerando la fuerza y efecto plenos que deben darse a las conclusiones y sentencia del caso de García, mas creemos que la apelada está en

lo cierto al sostener que constituían prueba tendente a probar que Saturnina fué la ganadora de la primera carrera. La opinión y sentencia de la corte y la contestación de la demandada admitiendo las alegaciones esenciales de la demanda, son, todas y cada una de ellas, prueba de referencia que tiende a demostrar que Saturnina en verdad ganó la primera carrera. Esto por sí solo dispondría de la sentencia de la corte inferior.

Por supuesto, no hemos perdido de vista que los apelantes sostienen que Saturnina nunca fué legalmente, así podría decirse, la ganadora de la primera carrera. Decimos legalmente porque si los apelantes están en lo cierto, para los fines de ley no hubo ganador en la primera carrera.

Parece éste el momento oportuno para hacer constar que podría haber otras formas en que se puede determinar el ganador de una carrera además de la declaración específica del jurado del hipódromo. Todo el que haya presenciado el desarrollo de las carreras sabe que determinado caballo puede adelantarse a los demás y en tal caso nadie dudaría cuál es el ganador de la carrera. ¿Debe decirse que cuando ése es un hecho saliente no hay forma alguna en que posiblemente se puede determinar el ganador de una carrera a no ser a virtud de la declaración específica del jurado? ¿Qué la Comisión Hípica no tiene en reserva la facultad de determinar un hecho saliente por todos conocido?

Tócanos ahora considerar cuál fué el efecto probatorio del récord o expediente del caso de García. Uno de los hechos sobre los que no ha habido disputa en este caso es que los autos en el de García fueron admitidos como prueba. Supongamos que en el juicio la demandada hubiera ofrecido en evidencia los procedimientos en el caso de García y los demandantes no se hubiesen opuesto. ¿Cuál habría sido entonces el efecto de la admisión de ese expediente en evidencia? ¿Qué valor probatorio podría atribuírsele en lo referente a un extraño al pleito anterior? En cuanto a las cuestiones de evidencia a que nos hemos referido, tenemos muy poca duda

de que en el presente caso constituiría prueba de referencia de los hechos establecidos en el otro pleito. Tal vez los demandantes descansaron en el hecho de que anté un juez o tribunal tal prueba de referencia sólo sería ligeramente considerada; es decir, que no se le concedería gran peso. Podemos también imaginarnos que los demandantes presentaran objeción al récord por ser meramente prueba de referencia, y la corte sostuviera la objeción pero lo admitiese por otros fundamentos o porque no se le formuló ninguna otra objeción. Entonces surgiría la cuestión en torno a cuál sería el valor probatorio de la sentencia, independientemente de la mera cuestión de prueba de referencia. Por supuesto, esta situación, si no una más fuerte, surge con motivo de la estipulación en este caso.

Hemos hecho un estudio considerable de las autoridades respecto a la fuerza y efecto de una sentencia anterior ofrecida como *res adjudicata* en otro caso. Hemos hecho esto, no porque pueda posiblemente aplicarse la alegación de *res adjudicata,* sino para tratar de determinar cuáles eran los hechos que podían considerarse probados o que la sentencia anterior tendía a probar. Hemos de confesar qué las decisiones publicadas han arrojado muy poca luz en esta pesquisa, hasta donde hemos podido averiguar. Es cierto que ordinariamente una sentencia es la determinación de los derechos entre las partes más bien que la determinación de cualquier hecho en particular o de un conjunto de hechos. Sin embargo, hechos o un conjunto de hechos deben y pueden ser determinados por una sentencia.

Cuando un demandado presenta la alegación de *res adjudicata* y el demandante niega que hubiera sentencia alguna fijando los derechos entre las partes, entonces, desde luego, se le hace necesario al demandado demostrar que los hechos del caso anterior eran los mismos o por lo menos que coincidían con los que se tratan de probar en el segundo juicio; que las cuestiones en litigio eran las mismas, o que ciertos extremos estaban necesariamente envueltos. Se sigue, pues,

que el demandado en el segundo caso puede ofrecer los autos del primero para demostrar que los hechos de cada pleito eran los mismos o tan similares que hacían imposible el resarcimiento del actor. Por tanto, a lo menos bajo una alegación de *res adjudicata* los procedimientos en el caso anterior tienen un valor probatorio terminante. ¿Quiere esto decir que sólo tienen valor probatorio a los fines de la alegación de *res adjudicata* o que lo tienen como una cuestión *in pais;* en otras palabras, para probar que algo en particular ocurrió? La verdadera objeción a los autos del caso anterior es probablemente, si no de seguro, que el récord del primer pleito era, en lo tocante a un extraño que no tenía relación alguna con el caso anterior ni nexo jurídico con cualquiera de las partes, irrelevante a las cuestiones del segundo pleito. Originalmente, la primera acción era enteramente *res inter alios acta* en lo que atañía a los demandantes en este caso. Cuando la cuestión a ventilar es si el que acertó seis carreras tenía derecho al *pool,* una sentencia concediendo éste al que acertó siete carreras no puede ser completamente irrelevante como un hecho general. Puede ser irrelevante en cuanto a determinada persona, pero es prueba tendente a demostrar que el *pool* fué adjudicado al ganador de siete carreras. El Sr. Wigmore dice, al hablar de los autos de un caso anterior entre las mismas partes, o algo por el estilo:

"... . Es más bien la *extensión de la ayuda ejecutiva de la corte, sobre ciertos términos,* a un reclamante o a un demandado, *sin investigar* los méritos de los hechos." 2 Wigmore on Evidence, 2a. ed., pág. 1019.

No puede uno examinar la jurisprudencia en torno al efecto de un expediente anterior sin considerar que tal expediente constituye evidencia para los fines de la alegación de *res adjudicata.* Puede que de por sí no pruebe ciertos hechos determinados por la sentencia anterior. Quizá la mejor manera de expresar esto es, no obstante la crítica del Sr. Wigmore, que la sentencia es evidencia de los derechos de-

terminados por la decisión de la cuestión o cuestiones en controversia en el pleito anterior.

Conviniendo, como lo hacemos, en que no se trata de un caso de una alegación de *res adjudicata,* tenemos que averiguar el efecto de la sentencia anterior, independientemente de las reglas sentadas en tales casos. Cabe decir que, ya que no es éste un caso de *res adjudicata,* las sugestiones u observaciones del Sr. Wigmore no son aplicables.

De paso podríamos decir que aun bajo los principios de *res adjudicata* el derecho determinado en el caso anterior fué que a García le correspondía el *pool* por haber acertado los ganadores de las siete carreras.

Hay varios caminos para determinar el efecto de la estipulación presentada en este caso. En lo que a los demandantes concernía, la estipulación puede considerarse como sus admisiones o declaraciones. Ya hemos llamado la atención hacia el hecho de que es en parte debido a la estipulación que se ha demostrado que los apelantes acertaron seis carreras; que el jurado del hipódromo anuló la primera, y que la Comisión Hípica declaró sin jurisdicción al jurado. Todos estos hechos son necesariamente admitidos por los apelantes. Admisiones o declaraciones solemnes tienen el mismo efecto que evidencia. La estipulación admitió más específicamente que los autos del caso anterior constituían prueba. Si estas premisas son correctas, se colige que tal expediente era por lo menos alguna evidencia del hecho de que hubo ganadores en las siete carreras y que Saturnina ganó la primera. Necesariamente, según hemos indicado, los autos del caso de García no eran obligatorios para los apelantes en este caso y ellos pudieron haber demostrado que los hechos eran distintos. No trataron de hacerlo, sino que aparentemente se mantuvieron en la idea de que la primera carrera fué anulada para siempre. Con estas admisiones o declaraciones ante sí, la Corte de Distrito de San Juan tenía derecho a creer que hubo siete carreras y que Saturnina ganó la primera.

Hasta ahora hemos estado considerando la estipulación

como algo incidental, pero es el elemento principal del caso. A fin de evitar un juicio, las partes se pusieron a la voz y estipularon sobre lo que sería considerado como evidencia en el caso. El efecto de tal estipulación era obviar la necesidad de un juicio, o, como se dice en algunos casos, prescindir de un jurado.

Así, pues, la estipulación en el presente caso puso claramente en evidencia los autos del anterior por el valor que pudieran tener. En esos autos había evidencia tendente a demostrar que Saturnina había ganado la primera carrera. En otras palabras, fué la intención de las partes según la estipulación que los hechos probados en el caso de García, aunque posiblemente no fuesen concluyentes, tuvieran un valor probatorio en el presente litigio.

Resumiendo. De por sí, el expediente del caso anterior no era *res adjudicata* según ha de interpretarse esa frase. Los principios de *audi alteram partem* impiden esto fundamentalmente. Debe oírse a la otra parte. Igualmente, así como debe oírse a la otra parte, la estipulación dió a la demandada ciertas ventajas o derechos por vía de prueba. De lo contrario, el efecto de la estipulación sería privar a la demandada de su día en corte.

Aun si la evidencia de haber ganado Saturnina o cualquier otro caballo la primera carrera debiera ser excluída de nuestra consideración, sin embargo, nos sentiríamos obligados a resolver que los demandantes dejaron de establecer su acción. Según hemos visto, admitieron palmariamente que hubo siete carreras, que el jurado anuló o trató de anular la primera, y que la Comisión Hípica declaró que el jurado no tenía jurisdicción para anularla. Luego quedaría en pie el hecho de que era deber de los demandantes probar que tenían derecho al producto neto del *pool*. No podían hacer esto sin demostrar que la primera carrera no podía contarse en forma alguna. Resolvemos que esta posibilidad no fué eliminada por la supuesta anulación de la primera carrera por el jurado.

Los apelantes mantienen que sólo era el jurado quien tenía la facultad de determinar el ganador en la primera carrera. Admitiendo todo eso, no queda excluída la posibilidad de que aun así podía hacerse la determinación del ganador de la primera carrera. Por haber dejado de probar que el ganador de la primera no pudo ser determinado legalmente, los demandantes están en la situación de no haber aducido una causa de acción completa.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Señor Del Toro está conforme con la sentencia.

El Juez Asociado Señor Hutchison disintió.*